Your Honor, is this case on the docket 2-17-0, 2-16-0748, people of the state of Illinois, and in Appalooney, the early Betance-Lopez defendant, Trout. The other involved in the action of the defendant, Trout, is Eva Pitu Pujabi. The other involved in the action of the defendant in Appalooney, Mr. Adam Quayle. Ms. Pujabi. May it please the Court, I represent the appellant in this matter, Ruben Betance-Lopez. Excuse me. Mr. Lopez appealed a semi-dismissal of his post-conviction petition. Mr. Lopez was convicted of two counts of predatory criminal sexual assault, of MM. One count of vaginal penetration and another count of anal penetration. His post-conviction petition concerns only the anal penetration count. He raises a claim of ineffective assistance of counsel for failing to offer an independent translation. That could have been raised, could it not, counsel, in the direct appeal? That issue certainly was first on the front burner in that direct appeal. So why is this not forfeited? Yes, Your Honor, this was at the forefront in the direct appeal. The factual support for this claim lies outside the record. Would you keep your voice up, please? We've got a high ceiling. Yes, I'm sorry. There are people in the back who need to hear, too, so. I apologize. That's okay. It sounds like you have a little bit of a COVID fever. I do. As do I. Anyway, go ahead. Sure. So Mr. Lopez needed to procure an independent translation without this around-the-rim phrase to support his contention that the State used an inaccurate translation and that counsel was ineffective for not procuring such a translation to show that, in fact, that his claim was not fanciful, that such a translation could have been procured. And so where the claim— There was an interpreter for trial for Mr. Lopez, correct? Yes, there was someone interpreting the proceedings. Yes, for him, so he could understand what was being said. Yes, that's right. So doesn't Strickland stand for the proposition that the defendant does play a role, even though he is not—he doesn't do any of the legal work in the case, but communication with his counsel, that's on his shoulders? Yes. Is that correct? Yes, that's correct. And he didn't raise it in his post-trial motion or in his direct appeal, despite the fact that he knew what was being said on the tape and he knew there was a discrepancy, correct? That's correct. So how is that not forfeited or waived when he knew that issue at the time? Because, Your Honor, without the independent translation that he's attached to his petition, had he tried to raise this on direct appeal, the claim— Well, he could have raised that while he was sitting there in the courtroom at trial by nudging his lawyer and pointing out the discrepancy, correct? Well, yes, Your Honor, he could have. And I think the discrepancy was that issue on direct appeal. So to the extent that that issue could have been raised on direct appeal, it was, but he could not have raised on direct appeal his counsel's ineffectiveness for failing to procure an independent translation, because at that point it would have been speculative, I think, to raise it on direct appeal. Now, after having procured this translation, he can make the claim that such a translation that did not include the around-the-rim phrase was capable of being procured. Well, that—this independent translation really doesn't really add very much at all, does it? Because there's an indication that while the word around the rim is not— or the words around the rim aren't there, there is a phrase or a word that's unintelligible. I mean, it reads, I would go like this, comma, but I wouldn't put it inside her or anything. How is that at all more helpful? Yes, Your Honor. Well, it's helpful because it doesn't include the phrase around the rim. Whatever it is that this independent translator heard, she did not hear around the rim. And these are the kinds of things that can be further developed at an evidentiary hearing. Ideally, you would have Officer Arroyo, this translator that translated for his post-conviction petition, as well as the translator who translated for the state's transcript, all come testify at a hearing as to this portion of their translation. Perhaps the translator could be asked, well, okay, it's unintelligible, but can you rule out the phrase around the rim? Certainly there are open questions, but I think given that you have— Mr. Lopez says he didn't make the statement. Officer Arroyo didn't include this phrase in his translation. If the court heard another translation from a certified translator who also could not include this phrase in her translation, I think it's hard to say that it's not at least arguable that the court may have concluded Mr. Lopez didn't make the statement or may not have been quite so ready to rely on this statement. Well, but the court knew there was a discrepancy, and the court had other evidence to rely on as well. Although he did discuss the phrase around the rim, but there was independent DNA evidence for one of the other counts. There was evidence that there was semen found in the anus. So the court had other evidence to rely on besides the discrepancy in the transcript. Yes, Your Honor, the court did also rely on the forensic evidence to corroborate the around the rim statement. You know, yes, there was semen on the anal swab, but it's at least arguable that could have been attributable to the vaginal contact that occurred. It would be one thing if Mr. Lopez was challenging both his convictions, but he is not disputing that vaginal contact occurred. It's conceivable that semen deposited on the crotch of Eman's underwear through that vaginal contact may have transferred to her anal area either through the force of gravity as she was lying on her back or simply because perhaps her underwear shifted as she was moving around. But, you know, I don't think anyone can look at this record and not conclude that the court did rely on this phrase to some significant degree in finding that anal contact occurred. The court basically took it as a confession to anal contact. Let's get back to the forfeiture. You rely on Turner for the way of evading the forfeiture, the Turner case. The Turner case was a death penalty case, wasn't it? So isn't their appointment of first stage counsel at the first stage in a postconviction in a death penalty case? Yes. And that case is a little different than what we have here. I'm still a little bit stuck on this issue of forfeiture. Again, how do we get past that to even resolve your issues or get to your issues? Sure, Your Honor. So because this claim relies on factual support outside the record, the claim cannot survive. It's irreverent. Yes, the factual support lies outside the record. He could not have, obviously on direct appeal, you're confined to what's within the record. Had he not, had he raised this on direct appeal, it would have been completely speculative to say that an independent translation was even capable of being procured without this around the rim phrase. It would have been speculative at that point. But why would he have even needed an independent translation when there was a discrepancy between what Arroyo said and what the transcript reflected? Well, because now... We had Arroyo, Investigator Arroyo didn't testify that the around the rim phrase was used. That's true, Your Honor. The court did have that discrepancy before it, but now we actually have an apples-to-apples comparison. On direct appeal, this court observed that unlike Officer Arroyo, who was interpreting in real time without a lot of time to think, the translator who prepared the transcript had the luxury of listening to the recording multiple times to ensure an accurate translation. Well, now we have another independent translator who also had the luxury of listening to the recording multiple times, and she did not hear this phrase. Yes, what she heard was partially unintelligible, but she did not hear this phrase. And we have Mr. Lopez saying he didn't make this statement. We have Officer Arroyo who didn't hear it. If the court heard another translation, now from a certified translator who also could have taken her time listening to this translation, I think it's hard to say that it's not at least arguable that the court may have concluded Mr. Lopez didn't make this statement, which the court interpreted basically as a confession to anal contact. Okay, say we get past the forfeiture. Now we will get Strickland standard. You have a two-pronged test on Strickland. How do we, as both of my colleagues are pointing out to you, how do we get past the second prong? There's a reasonable probability that but for counsel's unprofessional errors, the results would have been different with all of the evidence in addition to that statement. Well, again, the standard at the first stage is low, even where the chance of acquittal is less than 50. There's authority holding even where the chance of acquittal is less than 50 percent. Excuse me. For purposes of surviving summary dismissal, the petitioner need only show it's arguable that perhaps a less than 50 percent chance of a different outcome could have resulted without the error. And, again, here the court relied heavily on this phrase. We do have the forensic evidence, but it's not as though he's saying I didn't have any contact with MM. We also have MM's testimony and the diagram, correct? Yes, we do. You can't discard that, can you? No. That you touched her there? Sure. She pointed to her rear, her bottom. It's not clear whether that meant her butt cheeks, her anus. I don't think that clarifies whether there was contact, however slight, with a sexual organ. But we can't just discard that. We can't discard that. The semen found in the anus, it was the swab from inside the anus. And your theory is that that could have been basically leaking from vaginal penetration. Yes, or her underwear could have been. You're asking us to re-weigh the evidence, and that's not our function. At this stage, we're just asking you to consider whether it's arguable that this could have changed the outcome. It has to be more than arguable. There has to be a reasonable probability that the outcome would have been different. Even at the first stage. At the first stage, the standard is whether it's arguable, whether there's a reasonable probability. Just as the constitutional claim is different than a reasonable probability, the Strickland standard requires a showing that there is a reasonable probability. That's correct, but for purposes of surviving summary dismissal, we are just required to make out an arguable claim of ineffective assistance of counsel. If there are no other questions from this Court, for the reasons argued here and in the briefs, Mr. Lopez asks that this Court reverse the summary dismissal on his post-conviction petition and remand for second-stage proceedings. Thank you. You'll have time on your phone. Thank you. May it please the Court, Counsel Adam Fedekhor on behalf of the people of the State of Illinois. The defendant contends that he received ineffective assistance of trial counsel. However, he fails to explain why he didn't bring it up on direct appeal. I'd like to quote a portion of the decision that this Court rendered. They stated that the defendant maintains that the trial court relies on the transcript as substantive evidence prejudiced him because there's a conflict between the transcript and the recording. This Court acknowledged that the defendant has become aware of this issue, of this conflict between the translation and the transcription, yet he failed to bring up these arguments. Well, counsel is arguing that because there was no independent transcript without the words around the rim in the record, that's the reason that they allegedly couldn't bring it up at direct appeal. Obviously, we questioned counsel about that. But so without that transcript, how could they have brought it up? I mean, isn't this independent evidence that wasn't available then? It's an alleged independent evidence of his support for the discrepancy, but as this Court has noted, the defendant had a translator during trial and he was made aware that the around the rim statement was being said and he said nothing and he stayed silent. He was aware of this discrepancy. The independent translation is just the defendant's attempt to support his allegation, but it's not proof of his lack of knowledge because knowledge was there. Well, is it enough to get past forfeiture, though? It is not. It's not an explanation as to his knowledge because he knew of the conflict at the time of the direct appeal. It's just a support for the allegation. Initially, did he and his attorney, I believe it was his attorney, at trial was objecting to allowing this second transcript in? They objected not the second transcript. Translation. She objected three times. The first objection, she stated it's unknown who transcribed the audio tape. She indicated that it was unknown if it was accurately transcribed into English. The trial court denied it. The trial court stated trial counsel makes no argument about accuracy. However, defense counsel is ambiguously stating we don't know if it's accurate. The second counsel objected for the second time at trial and stated we don't know if Mr. Arroyo looked at the transcript thoroughly. And when this objection was made, the trial court heard Arroyo's testimony stating that, yes, the transcript was fairly and accurately transcribed in the interview. But the crux of the objection was the investigator's behavior. She's stating he didn't look at the transcription thoroughly. He just glanced at it like this. But he testified that he had previously examined it. Did he not? That is correct. But it does not negate the trial court's efforts in trying to undermine its accuracy and in trying to undermine the investigator's ability to verify it. Now, whether the trial court believes it or not, that's up to the trial court, because that's their job. However, defense counsel did their job by pointing out it may not be accurate. And that's the standard, providing reasonable, competent representation. It's not that the trial court buys the argument, but that they attempt to make it. Furthermore, even if this court doesn't buy the state's forfeiture argument, although we stand by it, we still argue that the defendant was not arguably prejudiced because of the significant evidence presented. We had this 5-year-old child at trial testify, I felt his penis on the back of my private parts. She drew an X over a drawing of a child over the buttocks. There's an anal swab that contains semen. There's also a swab on the external genitalia, which was matched to the defendant. There's a strong inference that that match came from the same source as the one from the anal swab, considering the testimony by NM, considering that they were alone in that room. The evidence is overwhelming, and as this court pointed out, it's not the role of this court to re-weigh that evidence. Barring any further questions, the people of the state of Illinois respectfully request that this court uphold the order dismissing defendant's post-conviction petition. Thank you. This court on direct appeal pointed out that counsel could have, maybe should have, procured their own translation for the defense. If the defense wished to challenge the translation in the state's transcript. On direct appeal, this court held that the trial court was entitled to rely on the state's transcript as substantive evidence, and to the extent that there were discrepancies between officer or lawyer's real-time translation and the state's transcript, the trial court was entitled to resolve that factual difference. In doing so, this court hypothesized the defense counsel could have offered an alternative translation. Well, Mr. Lopez has acquired that alternative translation, and it supports his contention that counsel was derelict in his duty for failing to do so. It supports his contention that he didn't utter this phrase, that he made contact around the room. The court's language was in the context of the direct appeal. I think it would be reasonable to understand that what we were saying was that's what counsel probably should have done at the time, rather than now or later. Well, it certainly provides support for the notion that counsel's duty should have extended to acquiring this evidence. How would that have changed the outcome of the trial, I think, is the issue we have to look at. Would it have changed the outcome of the trial based upon the totality of the circumstances, as the court said, when they used that phrase? Yes, and I acknowledge that there was some reliance on the forensic evidence here. But looking at the record, it's clear that the court relied significantly on the around-the-room phrase. And we have Mr. Lopez saying he didn't say it. We have Officer Arroyo saying, not including this phrase. Had the court heard another independent translation that also doesn't include this phrase, and had the court heard some cross-examination from Officer Arroyo that, look, there's this discrepancy. Officer Arroyo, this translation provides support for the contention that this was an inaccurate translation, and Officer Arroyo would have testified as such had he been pointed to this discrepancy. Had the court heard it? They didn't know what he would answer, did they? I mean, he didn't testify that that was the translation. But the transcript had the different words. I mean, how would cross-examination have necessarily brought that out? I mean, rule of thumb is you really don't ask a question you don't know the answer to. Sure. Well, had they had this independent translation, I think that it shows that it's at least arguable. Officer Arroyo would have said that that's an inaccurate translation. Officer Arroyo did testify, you know, broadly speaking, yes, this is an accurate translation, this transcript. But had he been pointed to this discrepancy, the new translation without the around the rim phrase at least arguably provides support for the claim that he then would have said, yes, this portion of the translation is inaccurate. Had the court heard all of that? Yes, Your Honor. Now, let me take you back to what's the defendant's responsibility when he knows there's this discrepancy? What is he supposed to do? Well, certainly he needs to raise it, and certainly... In People v. Walter Thomas, it's a death penalty case. The attorney asks the defendant prior to trial, long before prior to trial, about mitigation. In any history of mental illness, the defendant says no. And in a post-conviction petition, he raises the issue that he was mitigating circumstances, mental health issues. And the Illinois Supreme Court said that that was on the defendant. He had a responsibility to share with his counsel, and it's not ineffective assistance to raise an issue that the defendant and failure to raise an issue that the defendant himself is aware of. And it's the same thing here. The defendant knew about the discrepancy. The defendant knew about the discrepancy, and I have to go back and look at his affidavit. He claims in his affidavit attached to the post-conviction petition that he didn't make the phrase. I think he claims that he told counsel he didn't utter the phrase. You know, counsel was on notice of the discrepancy. That by itself should have flagged him to acquire a different translation to support Officer Arroyo's translation. And again, when you have the court relying on this phrase so heavily, it's at least arguable that the court may have concluded that the phrase was not made with this additional translation. If there were no further questions from this court. Again, Mr. Hope has asked that this court reverse the summary dismissal of this post-conviction petition. Thank both parties for their arguments today. There will be an issue, a decision issue in due course. Court stands in recess.